UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Loretta Azuka Obi

   v.                                           Civil No. 18-cv-550-SM

Exeter Health Resources, Inc.; Core
Physicians LLC; and Barton Assocs., Inc.


**SUPERSEDING REPORT AND RECOMMENDATION**

    Before the court is plaintiff Dr. Loretta Azuka Obi's original complaint (Doc. No. 2) and complaint addendum entitled, "Motion for Hearing" (Doc. No. 9). The matter came before the court for preliminary review, pursuant to 28 U.S.C. § 1915(e)(2) and LR 4.3(d)(2), after which the court issued a Report and Recommendation (Doc. No. 7) on September 18, 2018 ("September 18 R&R").

    The September 18 R&R appears to have crossed in the mail with the plaintiff's complaint addendum (Doc. No. 9). Accordingly, the court now conducts a further preliminary review of the claims asserted in both the original complaint and complaint addendum (Doc. Nos. 2, 9), and issues this Superseding Report and Recommendation ("Superseding R&R"), which replaces the September 18 R&R for all purposes, including the identification of plaintiff's claims.

Standard

The court may dismiss claims asserted in a complaint filed in forma pauperis, if the court lacks jurisdiction, a defendant is immune from the relief sought, the complaint fails to state a claim, or the action is frivolous or malicious.  See 28 U.S.C. § 1915(e)(2); LR 4.3(d)(2).  In determining whether a pro se complaint states a claim, the court must construe the complaint liberally.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam).  To survive preliminary review, the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief.'"  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).  The court treats as true all well-pleaded factual allegations, and construes reasonable inferences in plaintiff's favor.  See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).

Background

Dr. Obi was a contract physician, assigned to work as a hospitalist at Exeter Hospital pursuant to contracts executed between her and the defendants named in this action: Exeter Health Resources, Inc. ("Exeter Health Resources"); Core Physicians LLC ("Core Physicians"); and Barton Associates, Inc. ("Barton").  Dr. Obi alleges that she provided services at Exeter Hospital beginning on December 22, 2017, under a contract

2

that called for her to provide services through February 25, 2018. "Placement Orders," attached to the original complaint, bearing Dr. Obi's signature and a signature for Barton, assign Dr. Obi to work for Core Physicians at Exeter Hospital. An October 30, 2017 Placement Order (Doc. No. 2, at 13), covers the period from January 8, 2018 through February 25, 2018; and a December 27, 2017 Placement Order marked as "Schedule G" (Doc. No. 2, at 16) ("Schedule G Placement Order"), assigns Dr. Obi to work at Exeter Hospital from December 22, 2017 through January 1, 2018. The original complaint (Doc. No. 2) asserts that Dr. Obi's signature on the Schedule G Placement Order was forged.

Dr. Obi asserts that she received a phone call on January 3, 2018, terminating her contract to work at Exeter Hospital, based on what Dr. Obi characterizes as false staff reports and "coerced" patient complaints. Exhibits to the complaint indicate that concerns raised by Exeter Hospital staff and patients, relating to Dr. Obi's behavior, patient care, and medical record documentation practices, became the subject of an internal investigation beginning in January 2018. Exeter Hospital summarily withdrew Dr. Obi's clinical privileges at that time, and then reported its withdrawal of Dr. Obi's privileges to the National Practitioner Data Bank.[1]  Dr. Obi

---

[1]The National Practitioner Data Bank ("NPDB") is "a web-based repository of reports containing information on medical

3

asserts that her inclusion in the National Practitioner Data Bank was automatically published to all of her employers within the last three years and triggered a further inquiry by the New Hampshire Board of Medicine.  Dr. Obi asserts that the true motive for withdrawing her privileges was to defame her, through the National Practitioner Data Bank report, because she had refused to participate in improper billing practices and unsafe medical practices at Exeter Hospital.

A letter from Dan Doran, Core Physicians Senior Human Resources Partner, to Caley Thompson, Barton Associates Group Manager, dated January 26, 2018 (Doc. No. 2, at 18) reports that because Exeter Hospital had suspended Dr. Obi's clinical privileges, Dr. Obi was unable to fulfill the terms of her assignment at Exeter Hospital.  Doran's letter further reports that Core Physicians was cancelling Dr. Obi's placement due to "provider breach," and that Core did not intend to assign her to work again with Core Physicians or at Exeter Hospital.

Dr. Obi asserts that she has been unable to secure employment as a doctor since January 2018.  An email to Dr. Obi

---

malpractice payments and certain adverse actions related to health care practitioners, providers, and suppliers," and is "a workforce tool that prevents practitioners from moving state to state without disclosure or discovery of previous damaging performance."  U.S. Dep't of Health & Human Servs., NPDB, About Us, https://www.npdb.hrsa.gov/topNavigation/aboutUs.jsp (last accessed Oct. 1, 2018).

from a third party, Weatherby Healthcare, dated February 21, 2018 (Doc. No. 2, at 19), asked Dr. Obi to provide full documentation regarding Exeter Hospital's suspension of her clinical privileges.  Other documents in the record indicate that Dr. Obi has fallen behind in paying her bills.

                          Claims

     In Document Nos. 2 and 9, Dr. Obi asserts the following claims:

     1.   Defendants, Exeter Health Resources, Core Physicians,
          and Barton, breached their contractual obligations to Dr.
          Obi by:

          a.   Failing to conduct an adequate orientation of Dr.
               Obi with regard to her placement as a hospitalist at
               Exeter Hospital;

          b.   Failing to provide Dr. Obi with timely access to
               information, material, and login access she needed to
               perform her duties at Exeter Hospital;

          c.   Requiring Dr. Obi to work excess hours at Exeter
               Hospital without compensation;

          d.   Causing her clinical privileges at Exeter
               Hospital to be withdraw based on false allegations;
               and

          e.   Terminating her from her position at Exeter
               Hospital without notice, based on false allegations.

     2.   By causing Exeter Hospital to withdraw Dr. Obi's
          clinical privileges there based on reports that Exeter
          Hospital staff knew were false, Exeter Health Resources
          intentionally interfered with:

          a.   Dr. Obi's contractual relationship with Barton;

                             5

      b.    Dr. Obi's contractual relationship with Core Physicians; and

      c.    Dr. Obi's business relationship with Weatherby Healthcare and others.

3.    Exeter Health Resources defamed Dr. Obi, in that Exeter Hospital reported the withdrawal of Dr. Obi's clinical privileges, and the false reports upon which that withdrawal was based, to the National Practitioner Data Bank, which republished those reports to Dr. Obi's previous employers and the New Hampshire Board of Medicine.

4.    Defendants engaged in criminal conduct.

5.    Defendants engaged in fraud in contract negotiations with Dr. Obi, by failing to disclose as a condition of Dr. Obi's contract, that Exeter Hospital would require her to chart false diagnoses and upgrade billing codes for patients she did not manage, with the aim of improperly generating revenue for Exeter Hospital.

## Discussion

### I. Breach of Contract (Claim 1)

Liberally construed, the complaint and complaint addendum allege the existence of a series of contracts between Dr. Obi and defendants, and defendants' breach of the terms of those contracts. In an Order issued this date, the court directs defendants Exeter Health Resources, Core Physicians, and Barton to answer or otherwise plead in response to Dr. Obi's breach of contract claims, Claim 1(a)-1(e), as numbered in this Superseding R&R.

II. <u>Tortious Interference (Claim 2)</u>

Liberally construed, the original complaint (Doc. No. 2) asserts that Exeter Health Resources intentionally induced Core Physicians and Barton not to perform their duties under contracts with Dr. Obi. The order issued this date directs Exeter Health Resources to answer or otherwise plead in response to Claim 2(a) and 2(b), as numbered in the Superseding R&R.

Claim 2(c) above summarizes Dr. Obi's claims that Exeter Health Resources intentionally induced Weatherby Healthcare and other businesses not to perform their duties under contracts with Dr. Obi, or not to enter into any new contracts with Dr. Obi. Under New Hampshire law, which applies here, an element of intentional interference with prospective or existing contractual relations is the defendant's knowledge of the business relationship. See Hughes v. N.H. Div. of Aero., 152 N.H. 30, 40, 871 A.2d 18, 28 (2005); M & D Cycles, Inc. v. Am. Honda Motor Co., 208 F. Supp. 2d 115, 119, 2002 DNH 127 (D.N.H. 2002), aff'd, 70 F. App'x 592 (1st Cir. 2003).[2] Nothing alleged

---

[2]Exeter Hospital, Core Physicians, and Exeter Health Resources are entities located in New Hampshire. Plaintiff resides in New York. New York law is consistent with New Hampshire law. See also Hassan v. Deutsche Bank A.G., 515 F. Supp. 2d 426, 429 (S.D.N.Y. 2007), aff'd, 336 F. App'x 21 (2d Cir. 2009); Kronos, Inc. v. AVX Corp., 81 N.Y.2d 90, 94, 612 N.E.2d 289, 292 (1993). Barton is located in Massachusetts, but the record presently before the court does not reveal any basis for applying Massachusetts law in this case.

here suggests that Exeter Health Resources was aware of Dr. Obi's business relationship with Weatherby Healthcare, or any other entity that is not a party to this case. Accordingly, the district judge should dismiss Claim 2(c), as numbered in this Superseding R&R.

III. Defamation (Claim 3)

Dr. Obi alleges that defendants defamed her. Plaintiff's allegations, summarized in Claim 3 above, state a claim upon which relief can be granted for defamation under New Hampshire law, against Exeter Health Resources. See Vention Med. Advanced Components, Inc. v. Pappas, 188 A.3d 261, 271 (N.H. 2018) ("'A plaintiff proves defamation by showing that the defendant failed to exercise reasonable care in publishing a false and defamatory statement of fact about the plaintiff to a third party, assuming no valid privilege applies to the communication.'" (citation omitted)); Chagnon v. Union Leader Corp., 103 N.H. 426, 441, 174 A.2d 825, 835 (1961) (libel per se).[3] The Order issued this date directs Exeter Health Resources to answer or otherwise plead in response to Dr. Obi's defamation claim, Claim 3, as numbered in this Superseding R&R.

---

[3] The law in New York is consistent. See D'Amico v. Corr. Med. Care, Inc., 120 A.D.3d 956, 962, 991 N.Y.S.2d 687, 694 (N.Y. App. Div. 2014).

Nothing alleged in the complaint or complaint addendum indicates that any other defendant failed to exercise reasonable care in publishing a false statement of fact about Dr. Obi to any third party, without a valid privilege.  Accordingly, the district judge should dismiss Dr. Obi's defamation claim to the extent she asserts it against Core Physicians or Barton.

IV.   Criminal Conduct (Claim 4)

Dr. Obi alleges that defendants are liable for engaging in criminal conduct.  A private party has no standing to seek relief upon allegations of criminal conduct.  See Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973) (individual has no "judicially cognizable interest in the prosecution or nonprosecution of another").  Dr. Obi's allegations of criminal conduct fail to state a claim upon which she can seek damages or initiation of a prosecution.  Accordingly, the district judge should dismiss Claim 4, as numbered in the Superseding R&R.

V.    Fraud (Claim 5)

New Hampshire law recognizes that the procuring of a contract by means of fraud is an actionable tort.  Van Der Stok v. Van Voorhees, 151 N.H. 679, 681, 866 A.2d 972, 975 (2005).

> The party seeking to prove fraud must establish that the other party "made a representation with knowledge of its falsity or with conscious indifference to its truth with

9

>     the intention to cause another to rely upon it." . . .
>     [T]he party seeking to prove fraud "must demonstrate
>     justifiable reliance."

Id., 151 N.H. at 682, 866 A.2d at 975 (citations omitted).

"Damage is an element of fraud in the law." Record v. Rochester Tr. Co., 89 N.H. 1, 8, 192 A. 177, 182 (1937). Fraud may consist of the intentional concealment of a material fact.[4] Batchelder v. N. Fire Lites, Inc., 630 F. Supp. 1115, 1118 (D.N.H. 1986). For "a failure to disclose to be actionable fraud, there must be a duty arising from the relation of the parties to so disclose." Id.

Claims of fraud are subject to special pleading rules under the Federal Rules of Civil Procedure. Rule 9(b) requires plaintiffs to state with particularity the circumstances constituting the fraud with respect to elements not bearing on the conditions of a person's mind. See Fed. R. Civ. P. 9(b). That rule "requires plaintiffs to specifically plead 'the time, place, and content of an alleged false representation.'" Mulder

---

[4] The law in New York is consistent. See Pasternack v. Lab. Corp. of Am. Holdings, 27 N.Y.3d 817, 827, 59 N.E.3d 485, 491 (2016) ("The elements of a fraud cause of action consist of a misrepresentation or a material omission of fact which was false and known to be false by [the] defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury." (internal quotation marks and citations omitted)).

v. Kohl's Dep't Stores, Inc., 865 F.3d 17, 22 (1st Cir. 2017) (citation omitted).

Liberally construed, Dr. Obi's allegations of fraud, summarized in Claim 5, are that defendants failed to disclose that, as a condition of her contract to work at Exeter Hospital, Exeter Hospital would require her to chart false diagnoses and upgrade billing codes for patients she did not manage, to generate more revenue, and that if she failed to meet those requirements, she would be terminated summarily.  Dr. Obi alleges that because she was unaware that Exeter Hospital would impose those illegal and unsafe requirements upon her, she accepted the hospitalist contract position and was thereafter terminated summarily.

Dr. Obi's allegations of fraudulent omissions occurring in contract negotiations are not particularized as to who owed her a duty of disclosure, or who had knowledge of the alleged undisclosed job requirements and the terms and manner in which she would be terminated if she did not meet those alleged requirements.  Accordingly, the district judge should dismiss Dr. Obi's claims of fraudulent omissions in contract negotiations, Claim 5, as numbered in this Superseding R&R, without prejudice to her ability to move to amend the complaint within thirty days, pursuant to Fed. R. Civ. P. 9 and 15, to state her claims of fraud with the requisite particularity.

11

Conclusion

For the foregoing reasons the district judge should direct as follows:

1. Claims 2(c) and 4, as identified in the Superseding R&R, are dismissed as to all defendants;

2. Dr. Obi's defamation claims are dismissed to the extent that they are asserted against Core Physicians or Barton, without prejudice to Dr. Obi's ability to move to amend the complaint to add a defamation claim against either or both of those defendants, pleading facts sufficient to state a defamation claim against those defendants; and

3. Dr. Obi's fraud claims are dismissed as to all defendants, without prejudice to Dr. Obi's ability to move to amend the complaint to add a claim of fraud against any defendant, pleaded with the particularity required by Fed. R. Civ. P. 9(b).

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). The objection period may be extended upon motion. Failure to file objections within the specified time waives the right to appeal the district court's order. See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

*Andrea K. Johnstone*
Andrea K. Johnstone
United States Magistrate Judge

October 2, 2018

cc: Loretta Azuka Obi, pro se